IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 22-cv-02578-NRN

C.D.,

Plaintiff,

v.

KILOLO KIJAKAZI, Acting Commissioner of Social Security,

Defendant.

**OPINION AND ORDER**

**N. Reid Neureiter**
**United States Magistrate Judge**

The government determined that Plaintiff C.D.[1] was not disabled for purposes of the Social Security Act. AR[2] 23. Plaintiff has asked this Court to review that decision. The Court has jurisdiction under 42 U.S.C. § 405(g), and both parties have agreed to have this case decided by a United States Magistrate Judge under 28 U.S.C. § 636(c). Dkt. #10.

**Standard of Review**

In Social Security appeals, the Court reviews the decision of the administrative law judge (ALJ) to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied. *See Pisciotta v. Astrue,*

---

[1] Pursuant to D.C.COLO.LAPR 5.2, "[a]n order resolving a social security appeal on the merits shall identify the plaintiff by initials only."

[2] All references to "AR" refer to the sequentially numbered Administrative Record filed in this case. Dkts. ##9, and 9-1 through 9-9.

500 F.3d 1074, 1075 (10th Cir. 2007). "Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." *Raymond v. Astrue*, 621 F.3d 1269, 1271–72 (10th Cir. 2009) (internal quotation marks omitted). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes a mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The Court "should, indeed must, exercise common sense" and "cannot insist on technical perfection." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012).

The Court cannot reweigh the evidence or its credibility. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). However, it must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty v. Astrue*, 515 F.3d, 1067, 1070 (10th Cir. 2007). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted).

## Background

Plaintiff applied for disability insurance benefits under Title II on July 7, 2020, alleging a disability onset date of April 21, 2020. AR 204–05. Both claims were initially

denied on October 28, 2020, AR 124–134, and again upon reconsideration on May 26, 2021. AR 135–140.

Thereafter, Plaintiff filed a request for hearing on June 10, 2021. AR 141. The hearing was held on November 19, 2021, and the ALJ issued an unfavorable decision on March 10, 2022. AR 12–28.

The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. AR 1–6. This appeal followed.

In her March 10, 2022 decision, at the second step of the Commissioner's five-step sequence for making determinations,[3] the ALJ found that Plaintiff had the severe impairments of peripheral neuropathy, bilateral multiple toe amputations, and obesity. AR 18.

The ALJ found at step three that Plaintiff did not have an impairment or combination of impairments that meets the severity of the listed impairments in the regulations. AR 18. After making this finding, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform:

> Sedentary work, as defined in 20 CFR 404.1567(a), including lifting or carrying 10 pounds occasionally and less than 10 pounds frequently, with the following limitations: The Claimant cannot climb ladders, ropes, or scaffolds. He can frequently finger bilaterally. He can occasionally feel bilaterally. He can tolerate occasional exposure to work in extreme cold or

---

[3] The Social Security Administration ("SSA") uses a five-step sequential process for reviewing disability claims. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step process requires the ALJ to consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to her past relevant work; and, if not, (5) could perform other work in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988). The claimant has the burden of proof through step four; the SSA has the burden of proof at step five. *Lax*, 489 F.3d at 1084.

> extreme heat, and to working at unprotected heights, or around heavy, unprotected major manufacturing machinery.

AR 18–19.

At step four, the ALJ found that Plaintiff is unable to perform his past relevant work as a corrections officer. AR 22. The ALJ then found at step 5 that in light of Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. AR 22–23. These jobs include escort vehicle driver, document preparer, and addresser. AR 23. Accordingly, the ALJ found that Plaintiff and not been under a disability from April 21, 2020 through (the alleged onset date), through March 10, 2022 (the date of the decision).

## Analysis

On appeal, Plaintiff argues that the 2017 regulations abolishing the treating physician rule violated 5 U.S.C. § 706(2)(A) or, alternatively, that the ALJ erred in failing to apply the pre-1991 physician rule in formulating the RFC which, Plaintiff argues, applies even after March 27, 2017.

Plaintiff also argues that the ALJ improperly analyzed the relevant listings related to his condition. Specifically, as a result of Plaintiff's peripheral neuropathy and other conditions, including the previous amputation of all of his toes from both feet, he develops lesions on his feet that require routine wound care. The wounds have existed on either one foot or the other for a significant amount of time. However, by the time of the hearing, a wound had not existed for at least 12 months *on the same foot*. The ALJ therefore found that Plaintiff did not have an impairment that met the severity of the relevant Listing. Plaintiff contends that the ALJ erred by viewing his wounds in isolation,

4

when they should have been considered together for the purpose of determining how long his impairment has existed or will exist. Alternatively, Plaintiff argues that the wound on his left foot, which first appeared around December 2020, was still the size of a baseball at the time of the hearing in November 2021. Thus, the ALJ should have considered the future treatment of the wound to determine whether it would exist for at least 12 months.

Plaintiff further argues that the ALJ's analysis is not supported by substantial evidence because it does not account for some of his limitations, the ALJ mischaracterized evidence of daily living, and the ALJ failed to communicate all of Plaintiff's restrictions to the vocational expert (VE).

The Court rejects Plaintiff's arguments concerning the application of the treating physician rule but agrees that the ALJ's decision is not supported by substantial evidence. The case will be remanded for further proceedings.

**I. New Regulations**

Effective March 27, 2017, the regulations governing the procedures and standards for evaluating evidence, including medical source opinions and prior administrative medical findings, changed. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Because Plaintiff initially filed his claim in 2020, the ALJ applied the new, revised regulations.

Under the new regulations set forth in 20 C.F.R. §§ 404.1520c and 416.920c, the Commissioner is to consider the persuasiveness of each medical source's opinions using five factors: (1) supportability; (2) consistency; (3) relationship with the claimant

(which encompasses the length of treatment relationship, frequency of examinations; purpose and extent of treatment relationship, and examining relationship); (4) specialization; and (5) other factors tending to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. §§ 404.1520c(c), 416.920c(c).

Before the promulgation of the new regulations, administrative law judges were instructed to defer to the medical opinions of a social security claimant's treating physicians. This "treating physician rule . . . was originally developed by Courts of Appeals as a means to control disability determinations by administrative law judges under the Social Security Act." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 829 (2003). The Commissioner eliminated the treating physician rule, explaining that the change would "help eliminate confusion about a hierarchy of medical sources and instead focus adjudication more on the persuasiveness of the content of evidence." 82 Fed. Reg. 5844, 5853 (Jan. 18, 2017).

Plaintiff first argues that these new regulations for assessing medical opinions are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law" or, alternatively, that the Tenth Circuit case law requires continued application of the treating physician rule, notwithstanding the promulgation of the new regulations.

But this District has previously held that the new regulations set forth in 20 C.F.R. §§ 404.1520c and 416.920c abrogate the treating physician rule for claims filed on or after March 27, 2017. *See, e.g.*, *Harris v. Saul*, No. 19-CV-03715-NRN, 2021 WL 406080, at *2 (D. Colo. Feb. 5, 2021); *T.J.D. v. Kijakazi*, No. 20-CV-03209-CMA, 2022 WL 4726027, at *5 (D. Colo. Oct. 3, 2022); *S.E.H. v. Kijakazi*, No. 21-CV-01845-CMA,

6

2022 WL 6730905, at *3 (D. Colo. Oct. 11, 2022); *Carr v. Saul*, No. 20-CV-02241-NRN, 2021 WL 4307085, at *2 (D. Colo. Sept. 22, 2021).

Plaintiff's attorney in this case raised identical arguments in another case before District Judge Nina Y. Wang. In her analysis, Judge Wang reasoned:

> Though the Tenth Circuit has not expressly ruled on this issue, the Court believes that it would join numerous other courts in holding that "[b]ecause section 404.1520c falls within the scope of the Commissioner's authority and was not arbitrary and capricious, it abrogates . . . earlier precedents applying the treating-physician rule." *Harner v. Commissioner*, 38 F.4th 892, 896 (11th Cir. 2022); *cf. Austin v. Kijakazi*, 52 F.4th 723, 730 (8th Cir. 2022) (distinguishing a case that "involved the now-defunct treating physician rule" and concluding that "[u]nder the revised regulations, this rule no longer applies," such that the distinguished case was "both factually and legally inapposite."). The Court is therefore unpersuaded by Plaintiff's argument that the ALJ erred in not applying the treating physician rule to his claim and joins other district courts concluding that the new regulations have replaced the treating physician rule. *See, e.g.*, *Harner*, 38 F.4th at 896; *Francis v. Saul*, 558 F. Supp. 3d 527, 535 (E.D. Mich. 2021); *Manzanares v. Kijakazi*, Civ. No. 21-2 GBW, 2022 WL 4129411, at *4 (D.N.M. Sept. 12, 2022); *T.J.D.*, 2022 WL 4726027, at *5 (D. Colo. Oct. 3, 2022).

*C.D.I. v. Comm'r, Soc. Sec. Admin.*, No. 22-cv-00629-NYW, 2023 WL 2242505, at *6 (Feb. 27, 2023).[4]

This Court will not depart from the sound reasoning of other judges who have upheld the validity of 20 C.F.R. §§ 404.1520c and 416.920c as being within the Commissioner's delegated power under 42 U.S.C. § 405(a) "to regulate and provide for the nature and extent of the proofs and evidence and the method of taking and furnishing the same" for adjudicating disability claims. *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) (finding that new regulations were validly promulgated); *see also*

---

[4] Perhaps the Tenth Circuit will rule on this issue, as the plaintiff in *C.D.I.* filed an appeal on April 27, 2023.

*Bowers v. Kijakazi*, 40 F.4th 872, 875 (8th Cir. 2022) (rejecting plaintiff's claim that a treating physician's opinion was entitled to deference).

**II. Step 3 Analysis**

The Court next considers the ALJ's findings that Plaintiff's impairments do not meet the Listings. The Listings describe "impairments that [the Social Security Administration] consider[s] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a). An individual who satisfies one of the Listings (or its equivalent) is conclusively presumed to be disabled. *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). Accordingly, the criteria for meeting a Listing are interpreted strictly. *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("An impairment that manifests only some of those criteria, no matter how severely, does not qualify."). "In considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than a perfunctory analysis of the listing." *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (emphasis added).

**A. Listing 11.14**

The ALJ found at step 3 that Plaintiff did not satisfy listing 11.14. Specifically, Paragraph A of Listing 11.14 was not satisfied because Plaintiff can stand from a seated position, balance while standing or walking, and does not use an assistive device. AR 18. The ALJ found that Paragraph B was not satisfied because there were no marked limitations in any of the four Paragraph B criteria.[5]

---

[5] The Paragraph B criteria are (1) understanding, remembering or applying information; (2) interacting with others; (3) concentrating, persisting or maintaining pace; and (4)

8

Listing 11.14 requires either "[d]isorganization of motor function in two extremities, resulting in an extreme limitation . . . in the ability to stand from a seated position, balance while standing or walking, or use the upper extremities," or a marked limitation in physical functioning and at least a marked limitation in one of the four Paragraph B criteria. 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 11.14. Though Plaintiff points to some evidence in the record that demonstrates his difficulty standing, walking, and balancing, he does not demonstrate that there is an extreme limitation in his abilities. And, even if he had a marked limitation in physical functioning, Plaintiff has not identified any limitation in one of the four Paragraph B criteria. Thus, the Court finds no error in this conclusion.

**B. Listing 1.21**

The ALJ also found that claimant did not meet Listing 1.21 because the evidence did not "establish that surgical management has been, or is expected to be, ongoing for a continuous period of at least 12 months. The record shows that the claimant's condition improves within 12 months, then he incurs a new wound on the opposite foot." AR 18.

To meet the requirements of Listing 1.21, Plaintiff must show:

A. Evidence confirms continuing surgical management . . . directed toward saving, reconstructing, or replacing the affected part of the body.

AND

B. The surgical management has been, or is expected to be, ongoing for a continuous period of at least 12 months.

AND

C. Maximum benefit from therapy has not been achieved.

9

20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 1.21. The regulations define "continuing surgical management" as

> surgical procedures and any other associated treatments related to the efforts directed toward the salvage or restoration of functional use of the affected part. It may include such factors as post-surgical procedures, surgical complications, infections, or other medical complications, related illnesses, or related treatments that delay the individual's attainment of maximum benefit from therapy.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00M.

Plaintiff argues that his first surgical intervention was May 30, 2019, when he had a transmetatarsal amputation ("TMA"). Dkt. #13 at 29. He notes three months of follow up care between June and August of 2019. *Id.*

On June 16, 2019, Plaintiff presented to Dr. Morgan Kizzar, DPM, of Fremont Foot and Ankle for his on-week post-op appointment. He reported that his left foot was tender, painful, and swollen, and that the post-surgery boot was hurting his foot. AR 821. Dr. Kizzar noted that the surgery site on the dorsal left foot/ankle was not healing well, but also noted the ability to ambulate normally. AR 822.

On July 8, 2019, Dr. Kizzar noted that the surgery site was healing. However, she also noted painful hyperkarototic lesions present at the left lateral foot. AR 833. Dr. Kizzar recommended that Plaintiff perform daily foot checks to watch for wound formation. On July 28, 2019, Dr. Kizzar noted that the surgical site on the left foot/ankle had healed, and that the hyperkeratotic tissue had improved. AR 840.

Plaintiff presented again on August 13, 2019 for a post-op visit. The surgery site remained healed, and there was improvement in hyperkeratotic tissue from the prior appointment. AR 847. Dr. Kizzar noted that calluses are caused by pressure, usually in combination with friction. AR 848.

Plaintiff appears not to have treated with Dr. Kizzar again until May 4, 2020. He complained of a wound on the ball of his right foot that he reported had existed for about a month. AR 854. Dr. Kizzar noted an ulceration on the plantar right foot, which she debrided.[6] Debridement refers to the surgical removal of lacerated, devitalized, or contaminated tissue. Merriam-Webster Dictionary, *http://www.merriam-webster.com/dictionary/debridement* (last visited August 16, 2023)

On June 4, 2023, Plaintiff still had the wound on his right foot and reported having a new wound on the same foot, which Dr. Kizzar confirmed. AR 861–62. The new wound appeared on the distal tip of Plaintiff's third metatarsal. Dr. Kizzar debrided the wound on the ball of Plaintiff's right foot as well as the new wound. AR 862–63. The doctor educated Plaintiff on the "importance of offloading the area to allow for proper healing" and advised he wear a pad whenever ambulating.

On June 19, 2020, Plaintiff again presented to Dr. Kizzar complaining of the wounds on his right foot. AR 865. Dr. Kizzar debrided the wound and again instructed Plaintiff concerning home care.

---

[6] The ALJ appears to discredit this evidence, because notes from a May 5, 2020 appointment did not mention any open wound and suggested that Plaintiff was ambulating normally. But the purpose of the May 5, 2020 appointment with Dr. Mohr was to refill Plaintiff's pain patches—unlike Plaintiff's visit with Dr. Kizzar, he was not specifically seeking treatment from Dr. Mohr for his ulcers. AR 312. The notes from Plaintiff's visit to Dr. Mohr suggest that Dr. Mohr was aware of a neuropathic ulcer and osteomyelitis at some point, but did not review Plaintiff's past medical history during the appointment and had not reviewed it since December 12, 2019. It is unclear exactly what the ALJ suggests by noting that the May 5, 2020 appointment did not note an open wound. But, to the extent she suggests that the wound did not exist, this suggestion is absurd. Dr. Kizzar treated Plaintiff's wound with a debridement *the day before*. The wound must have existed the following day.

On July 10, 2020, Plaintiff reported that the smaller wound (on his metatarsal) was better and was not draining. The larger wound remained the same. AR 868. Dr. Kizzar again debrided the large wound. She also prescribed a pneumatic CAM fracture/walker boot to improve healing and decrease pain. She requested that Plaintiff follow up in two weeks, citing the lack of improvement since the last visit.

On July 24, 2020, Plaintiff reported that he was wearing the CAM boot as instructed. Dr. Kizzar again debrided the ulcer. AR 873.

By August 2020, Plaintiff requested surgery because the wound was not healing. AR 875. Plaintiff underwent a right foot sesamoidectomy[7] to remove two sesamoids, 1st metatarsal planing, and plantar wound debridement in September 2020. AR 882–83. Post surgery, Dr. Kizzar noted that the wound was healing well, but there were signs of infection. AR 885. Dr. Kizzar also noted that the second wound on the third metatarsal remained.

During the consultative examination in October 2020, the consultative examiner noted that Plaintiff had open wounds on his right foot. AR 350–58. There were no wounds on the left foot.

In or around December 2020, Plaintiff developed an ulcer on the plantar left foot. AR 908. By January 2021, the foot on the right foot healed. *See* AR 914–15. However, Plaintiff's new ulcer on the left foot remained. Dr. Kizzar debrided the left foot ulcer.

---

[7] A sesamoidectomy is performed to remove sesamoid bones, which are the small bones commonly found embedded within a muscle or tendon near joint surfaces. *See* AR 882; Anthony Y Yeung, Tafline C. Arbor, & Rohin Garg, *Anatomy, Sesamoid Bones*, National Library of Medicine, National Center for Biotechnology Information, https://www.ncbi.nlm.nih.gov/books/NBK578171/ (last visited August 16, 2023).

In February 2021, Dr. Kizzar again debrided the left-foot wound. Dr. Kizzar noted that the wound appeared to be getting worse. AR 923. In March and April 2021, medical records indicated that Plaintiff had an open wound on the left foot which was ongoing with wound care. AR 926–35.

In May 2021, an MRI noted "probable evidence of osteomyelitis involving the remaining distal aspects of the second and third metatarsals," and there was "diffuse cellulitis and myositis." AR 20; *see also* AR 438. Plaintiff had vascular surgery service to address this nonhealing wound at the left TMA site. AR 439-440.

Dr. Kizzar performed additional debridement throughout the months of May through October 2021. AR 937, 946, 951, 954, and 957. Plaintiff also sought regular treatment from St. Mary Corwin Hospital's Wound Care Center. In fact, from May to August 2021, Plaintiff had 19 appointments at St. Mary Corwin for his left plantar wound, in addition to his appointments with Dr. Kizzar.

At the time of the hearing in November 2021, Plaintiff was in a cast and boot, and testified that the wound was still the size of a baseball. AR 51. The ALJ found that, at the time of the decision, a wound had not persisted on Plaintiff's left foot for at least 12 months, and he therefore did not meet Listing 1.21. AR 20. As Plaintiff notes, there is no discussion in the ALJ's decision or during the hearing testimony of the future treatment required for Plaintiff's left foot ulcer.

The Court finds that the ALJ erred by examining the Plaintiff's wounds in isolation. The regulations explain:

> We consider any soft tissue injury or abnormality involving the soft tissues of the body, whether congenital or acquired, when an acceptable medical source(s) documents the need for ongoing surgical procedures and associated medical treatments to restore function of the affected body

13

> part(s) (see 1.00O1). <u>Surgical management includes the surgery(ies) itself, as well as various post-surgical procedures, surgical complications, infections or other medical complications, related illnesses, or related treatments that delay your attainment of maximum benefit from therapy (see 1.00O2).</u>

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00(L)(1)(a) (emphasis added).

After reviewing the chronology, it appears that Plaintiff has continuously had a wound or wounds under surgical management on one foot or another for more than a year. If these wounds are attributable to the bilateral toe amputations or to Plaintiff's severe impairment of peripheral neuropathy, the wounds may be under continuing surgical management as they are part of a related illness. However, if the medical evidence suggests that these wounds appear unrelated to either the surgery or Plaintiff's neuropathy, which seems unlikely, then treating the wounds independently may be appropriate. In any event, the ALJ must explain his reasoning with respect to this issue.

And, even if the ALJ appropriately considered the wounds on the left and right foot separately, the ALJ failed to examine whether Plaintiff's left foot wound could be expected to be under surgical management for 12 months. This was an error.

### C. Listing 8.04

The Court also finds that the ALJ committed error at step 3 by failing to examine the reoccurring lesions and ulcers under Listing 8.04, which relates to "chronic infection of the skin or mucous membranes, with extensive fungating or extensive ulcerating skin

legions that persist for at least 3 months despite continuing treatment as prescribed." 20

C.F.R. § Pt. 404, Subpt. P, App. 1 § 8.01.[8]

Section 8.00C1 defines "extensive skin lesions" as follows:

Extensive skin lesions are those that involve multiple body sites or critical body areas, and result in a very serious limitation. Examples of extensive skin lesions that result in a very serious limitation include but are not limited to:

> a. Skin lesions that interfere with the motion of your joints and that very seriously limit your use of more than one extremity; that is, two upper extremities, two lower extremities, or one upper and one lower extremity.
>
> b. Skin lesions on the palms of both hands that very seriously limit your ability to do fine and gross motor movements.
>
> c. Skin lesions on the soles of both feet, the perineum, or both inguinal areas that very seriously limit your ability to ambulate.

*Id.* § 8.00(C)(1).

The ALJ did not analyze whether Plaintiff's skin lesions or wounds—which have required, for example, surgical intervention, regular debridement, and other medical interventions, including twice weekly appointments to change the dressing on the

---

[8] Though neither party raised this issue, the Court may consider it sua sponte. *See, e.g., Wilting v. Astrue*, Civil No. 09-cv-01207-WYD, 2010 WL 3023387 at *7 (D. Colo. July 29, 2010) (unpublished) (considering two issues *sua sponte*); and *Womack v. Astrue*, No. CIV-07-167-W, 2008 WL 2486524 at *5 (W.D. Okla. June 19, 2008) (unpublished) (finding *sua sponte* that the ALJ erred at step four and explaining that "[t]his Court cannot ... ignore obvious and prejudicial errors, even if the litigants did not identify and debate them"). As explained in *Womack*, "[a] court's duty to scrutinize the record as a whole to determine whether the conclusions reached are reasonable and whether the hearing examiner applied correct legal standards to the evidence is especially important because 'unlike the typical judicial proceeding, a social security disability case is nonadversarial.'" 2008 WL 2486524 at *5 (quoting *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997)).

15

wound—meet the requirements for Listing 8.04. The ALJ's failure to consider a Listing would be harmless error "if findings [s]he made elsewhere conclusively negated" the claim under that Listing. *Carpenter v. Astrue,* 537 F.3d 1264, 1266 (10th Cir. 2008). However, in *Carpenter*, the court determined the error was not harmless because the ALJ's findings elsewhere in his decision did not "unambiguously negat[e]" the claim to satisfy the elements of the Listing. *Id.* 537 F.3d at 1268. The same is true here. Nothing in the decision at issue conclusively demonstrates that the criteria of Listing 8.04 are not satisfied. Therefore, remand is necessary for the Commissioner to properly consider whether the criteria of Listing 8.04 are met or equaled.

### III. Step 4 & 5 Analysis

Because the other issues in this case "may be affected by the ALJ's treatment of this case on remand," *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003), the Court briefly addresses those remaining issues it finds most significant.

#### A. RFC and VE Testimony

Perhaps the most troubling issue this Court finds with the ALJ's analysis at steps 4 & 5 is that the RFC does not account for the medical records and testimony that to promote healing the Plaintiff must elevate a foot afflicted with a wound. *See* AR 49, 553, 585–86, 663. Further, the past medical records suggest that Plaintiff would need to miss a significant amount of work to attend medical appointments with multiple specialists to treat his foot wounds. The ALJ can disregard this evidence if she chooses, but she must explain why; she cannot cherry-pick only those facts that conform to her determination.

This error is particularly troubling in light of the VE's testimony that, in the positions she identified as available, the person could not be off task more than ten percent of the time and could not miss more than two days of work in a month.

The Commissioner argues that Plaintiff failed in his briefing to "show how the longitudinal evidence establishes that he would miss at least two entire days of work per month to attend medical appointments, such as listing the existing appointments in the record by date or duration." Dkt. # 17 at 21. The Commissioner argues that, like the claimant in *Razo v. Colvin*, 663 F. App'x 710, 717 (10th Cir. 2016), Plaintiff did not substantiate his claim with medical records.

The Court disagrees. The claimant in *Razo* relied only on his own testimony, stating that he must attend a medical or therapeutic appointment three times per week, which would preclude gainful employment. *Id.* The Tenth Circuit declined to search the medical records to ascertain how many appointments the claimant would be expected to attend. *Id.* Here, the Plaintiff identified medical records in his brief, and the Court has already reviewed the records and the ALJ's chronology when considering whether Plaintiff was undergoing surgical management for a sufficient amount of time. It is apparent from such review that, for a considerable period, Plaintiff was seeking treatment from one specialist or another every other week, and sometimes as often as twice a week. And, as previously noted, at the time of the hearing Plaintiff was still treating a wound on his left foot with "probable evidence of osteomyelitis involving the remaining distal aspects of the second and third metatarsals," and "diffuse cellulitis and myositis." AR 20. It is therefore reasonable to conclude that Plaintiff would have an ongoing need for such appointments.

It may be the case that Plaintiff was able to work on a "regular and continuing basis" (*see* 20 C.F.R. § 404.1545(b) & (c)) despite these appointments and need for ongoing wound care, but there is no discussion of this possibility. "Considering the evidence in the record regarding the extent and frequency of Plaintiff's treatment, the ALJ must explain how Plaintiff's course of treatment is reconcilable with the vocational expert's testimony regarding tolerated absences in a manner that allows the Court to determine whether the ALJ's conclusion"—here, an implicit one—"that Plaintiff would not be absent two or more days per month is supported by substantial evidence in the record as a whole." *Kim J. H. v. Saul,* No. 18-CV-2736 (MJD/TNL), 2020 WL 872308, at *11 (D. Minn. Jan. 28, 2020), *report and recommendation adopted*, No. 18-CV-2736 (MJD/TNL), 2020 WL 869963 (D. Minn. Feb. 21, 2020).

### B. Daily Activities

At several points in her decision, the ALJ discounted Plaintiff's condition and complaints of pain based on his daily activities. *See* AR 20 ("The undersigned notes that the claimant remains relatively active. The claimant enjoys hunting, fishing, and camping. He oversees his children getting ready for school. The claimant also cares for his mother-in-law."). Upon review of the record, the Court finds that the ALJ overstates the evidence of daily activities.

Plaintiff states that he ensures his son is ready for school, feeds the dogs, and gathers the trash. Other than that, he stays off his feet. AR 241. He helps around the house by taking care of the trash, doing laundry, and cleaning up after the dog. AR 242. He claims he works on these tasks for about two hours with breaks in between for his feet. AR 242.

18

With respect to hobbies, Plaintiff reported that he likes to hunt, fish, hike, and work on 4x4s. However, he does these things sparingly as he must plan around his condition. AR 244. If he hunts, he only drives around, and when he fishes, he must look for handicap-accessible spots. AR 244. In the summer of 2021, Plaintiff went on a camping trip with his son, but he just stayed seated and "hung around camp" while he watched his son hike around the campsite. AR 54. Such limited activities are hardly indicative of a "relatively active lifestyle."

The ALJ may not rely on minimal daily activities as substantial evidence that a claimant does not suffer disabling pain. The sporadic performance [of household tasks or work] does not establish that a person is capable of engaging in substantial gainful activity." *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993) (internal citations and quotations omitted).

## Conclusion

For the reasons set forth above, the Commissioner's decision is **REVERSED** and **REMANDED** for further proceedings consistent with this decision.

Dated this 17th day of August, 2023

BY THE COURT:

N. Reid Neureiter
United States Magistrate Judge